# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 25, 2023          Decided July 26, 2024

No. 22-1045

LIQUID ENERGY PIPELINE ASSOCIATION,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND UNITED STATES OF AMERICA,
RESPONDENTS

ENERGY INFRASTRUCTURE COUNCIL AND ENBRIDGE INC.,
INTERVENORS

---

Consolidated with 22-1103, 22-1104, 22-1105, 22-1110, 22-1257, 22-1258

---

On Petitions for Review of Orders
of the Federal Energy Regulatory Commission

---

    *Miguel A. Estrada* argued the cause for Carrier Petitioners. With him on the joint briefs were *Amy L. Hoff*, *Elizabeth B. Kohlhausen*, *Charles F. Caldwell*, *Matthew S. Rozen*, *Aaron Smith*, *Daniel J. Poynor*, *Linda C. Bailey*, *Hyland Hunt*, and

null

2

*Ruthanne M. Deutsch*. *William S. Scherman*, *Jason J. Fleischer*, and *Steven M. Kramer*, entered appearances.

*Steven A. Adducci* argued the cause for Shipper Petitioners. With him on the briefs were *Richard E. Powers, Jr.*, *Matthew D. Field*, *Gregory S. Wagner*, and *William G. Bolgiano*.

*Matthew J. Glover*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Robert B. Nicholson* and *Robert J. Wiggers*, Attorneys, U.S. Department of Justice, and *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission.

*Miguel A. Estrada*, *Matthew S. Rozen*, and *Aaron Smith* were on the brief for intervenor Liquid Energy Pipeline Association in support of respondents. *Jason J. Fleischer*, *Steven M. Kramer*, and *William S. Scherman* entered appearances.

*Richard E. Powers, Jr.*, *Matthew D. Field*, *Steven A. Adducci*, *Gregory S. Wagner*, *William G. Bolgiano*, *Elizabeth A. Zembruski*, *Matthew T. Rick*, and *James Harrison Holt* were on the brief for Shipper-Intervenors in support of respondents.

Before: SRINIVASAN, *Chief Judge*, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Every five years, the Federal Energy Regulatory Commission reviews the methodology used by oil pipelines to set their maximum annual rate increases. That methodology is called the Index. In 2020, the

3

Commission conducted its five-year review and set the Index level for the next cycle. After that Index took effect, the Commission modified it on rehearing. We vacate that order because the Commission was obligated to—but did not— adhere to notice-and-comment procedures when resetting the Index on rehearing.

I.

A.

The Interstate Commerce Act (ICA) charges the Federal Energy Regulatory Commission with ensuring that the rates charged by interstate oil pipelines are "just and reasonable." 49 U.S.C. App. § 1(5) (1988). In the Energy Policy Act of 1992, Congress required the Commission to "establish[] a simplified and generally applicable ratemaking methodology" for producing just and reasonable rates. Pub. L. No. 102-486, § 1801, 106 Stat. 2776, 3010 (citing 49 U.S.C. App. § 1(5) (1988)).

The Commission implements that congressional mandate through the Index, a methodology for setting the maximum rate increases pipelines may charge customers each year. *Ass'n of Oil Pipe Lines v. FERC* (*AOPL I*), 83 F.3d 1424, 1429–31 (D.C. Cir. 1996). While pipelines are required to file their initial rates with the Commission, "pipelines may increase their rates without seeking the Commission's approval, so long as the increase does not exceed the annual limit, computed using the index." *Ass'n of Oil Pipe Lines v. FERC*, 876 F.3d 336, 339 (D.C. Cir. 2017). The Index is "designed to enable pipelines to recover costs by allowing pipelines to raise rates at the same pace as they are predicted to experience cost increases." *AOPL I*, 83 F.3d at 1430.

4

B.

The Commission reviews the Index every five years. In June 2020, the Commission began the process for its next five-year review by inviting comments on a new proposed Index. Notice of Inquiry, *Five-Year Review of the Oil Pipeline Index*, 171 FERC ¶ 61,239 (June 18, 2020). A group of pipelines (whom we will refer to as Carriers) and a group of pipeline customers (whom we will refer to as Shippers) both submitted comments. Carriers proposed changes that would give rise to a higher Index (and so would allow for higher potential cost increases) than the proposed Index, while Shippers sought the opposite.

On December 17, 2020, the Commission issued an Initial Order establishing an Index level higher than the proposed Index. Order Establishing Index Level, *Five-Year Review of the Oil Pipeline Index*, 173 FERC ¶ 61,245 (Dec. 17, 2020). In calculating that Index, the Commission adopted Carriers' proposals. The Commission published the Initial Order in the Federal Register and made the Order effective on February 16, 2021. *Five-Year Review of the Oil Pipeline Index*, 86 Fed. Reg. 9448. The Index established by the Initial Order was slated to become effective on July 1, 2021. *Id.*

Both Carriers and Shippers promptly sought rehearing of the Initial Order. Carriers asked for minor changes to the data source used in the Commission's calculations. Shippers, by contrast, substantively challenged the Commission's decisions in calculating the Initial Order's Index level.

On February 18, 2021, the Commission's Deputy Secretary issued a tolling order on the rehearing requests to prevent them from being deemed denied by operation of law. *See* 18 C.F.R. § 385.713(f). Importantly for our purposes, the

5

tolling order established that neither Carriers nor Shippers were permitted to comment in each other's rehearing proceedings. On July 1, 2021, while the tolling order remained in place, the Initial Order's Index took effect as scheduled.

Subsequently, on January 20, 2022, the Commission issued a Rehearing Order granting Shippers' rehearing request. Order on Rehearing, *Five-Year Review of the Oil Pipeline Index*, 178 FERC ¶ 61,023. The Rehearing Order adopted Shippers' suggestions for recalculating the Index and set a new, lower Index to be effective on March 1, 2022.

On February 22, 2022, Shippers requested rehearing or clarification of the Rehearing Order. They sought assurance that they could read the Rehearing Order to apply retroactively to the Initial Order's effective date, July 1, 2021. That would enable Shippers to seek refunds of any charged rates exceeding the Rehearing Order's Index. On May 6, 2022, the Commission denied Shippers' request, confirming that the Rehearing Order applied only prospectively.

II.

In their petitions for review, Carriers bring a variety of challenges to the Commission's Rehearing Order. We grant the petitions based on one of the grounds Carriers assert: that the Commission failed to comply with the Administrative Procedure Act (APA) when it modified the Index in the Rehearing Order without adhering to notice-and-comment procedures. Because our ruling in favor of Carriers on that ground affords them all the relief they seek—vacatur of the Rehearing Order—we have no need to consider any of their other challenges.

6

A.

As a threshold matter, the Commission contends that Carriers failed to exhaust their APA challenge before the agency. A party challenging agency action generally must first raise an issue before the agency to preserve it for judicial review. *Advocs. for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1150 (D.C. Cir. 2005). Here, the Commission argues that Carriers forfeited their APA notice-and-comment challenge by failing to assert it before the agency. We disagree.

Carriers had no ability to raise their notice-and-comment complaint before the agency granted Shippers' rehearing request in the Rehearing Order. Before any party sought rehearing of the agency's Initial Order, there of course would have been no ripe challenge to the way in which the agency would conduct any potential rehearing procedures: at that time, Carriers had no reason to know whether any rehearing procedures would in fact come to pass. And after Shippers sought rehearing of the Initial Order, the agency, as noted, prohibited Carriers from commenting in Shippers' rehearing proceeding. In those circumstances, Carriers had no occasion to raise their notice-and-comment challenge to the rehearing procedures before the Commission issued the Rehearing Order.

As we have explained, "courts have no authority to require petitioners seeking judicial review of a final agency action to further exhaust administrative procedures." *CSX Trans., Inc. v. Surface Trans. Bd.*, 584 F.3d 1076, 1079 (D.C. Cir. 2009). Carriers therefore were not required to raise their notice-and-comment challenge to the Rehearing Order before the agency in order to present it for judicial review.

7

B.

Because the ICA does not provide its own procedural rules, we assume the APA's procedural requirements apply. *See Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 348 (D.C. Cir. 2019); *see also Asphalt Roofing Mfrs. Ass'n v. ICC*, 567 F.2d 994, 1002 n.5 (D.C. Cir. 1977). The Commission does not dispute the applicability of the APA. We also assume for present purposes that the Commission's authority under the ICA to rehear its orders, *see* 49 U.S.C. App. § 17(6)–(7) (1988), encompassed its rehearing of the Index level established in the Initial Order. The question is whether the Commission could conduct that rehearing and change the effective Index level without abiding by the APA's notice-and-comment requirements.

"To foster public participation and facilitate reasoned decisionmaking, 'the Administrative Procedure Act requires agencies to afford notice of a proposed rulemaking and an opportunity for public comment prior to a rule's promulgation, amendment, modification, or repeal.'" *Humane Soc'y v. USDA*, 41 F.4th 564, 568 (D.C. Cir. 2022) (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1027, 1044 (D.C. Cir. 1987)). Consequently, "once an agency makes a rule—that is, once it makes a statement prescribing law with future effect—the APA requires the agency to provide notice and an opportunity for comment before repealing [or amending] it." *Id.* at 569.

Here, the Commission abided by the APA's notice-and-comment requirements when, in the Initial Order, it first promulgated the Index for the 2021–2025 five-year cycle. 86 Fed. Reg. at 9449. The agency, then, was obligated to "use the same procedures" to amend the Index. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). But when the Commission altered the Index by granting Shippers' rehearing request in the

8

Rehearing Order, it did so without adhering to notice-and-comment procedures.

The Commission does not suggest that its adjustment of the Index in the Rehearing Order fits within an exemption to the APA's notice-and-comment requirements. For instance, an interpretive rule generally need not undergo notice-and-comment procedures. *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995). *See also AOPL I*, 83 F.3d at 1432; *AT&T Corp. v. FCC*, 113 F.3d 225, 229 (D.C. Cir. 1997). The Rehearing Order, however, substantively altered the Index from the level prescribed in the Initial Order. The Commission does not contend otherwise. And "[w]hereas a clarification may be embodied in an interpretive rule that is exempt from notice and comment requirements, new rules that work substantive changes in prior regulations are subject to the APA's procedures." *Sprint Corp. v. FCC*, 315 F.3d 369, 374 (D.C. Cir. 2003) (internal citations omitted).

The Commission's central argument is that it afforded notice-and-comment procedures when first establishing the Index in the Initial Order, and that the Index proceeding remained ongoing through the completion of any agency rehearing proceedings. As a result, the Commission submits, there was no need to provide another round of notice-and-comment procedures while the same proceeding remained open. In the Commission's view, in other words, the alteration of the Index in the Rehearing Order was not a new proceeding requiring a new round of notice-and-comment procedures, but instead was a continuation of a preexisting proceeding for which notice-and-comment procedures had already been afforded.

The Commission's theory proves too much. Under the Commission's approach, it could grant rehearing of an

9

established rate methodology years after it took effect and became enforceable, and indeed could do so dozens of times in succession, without ever needing to afford notice to the public and an opportunity to submit comments about the desirability of altering (and repeatedly realtering) the prevailing methodology. There is no basis for allowing that kind of broadscale evasion of the APA's notice-and-comment procedural requirements.

In particular, there is no omnibus "rehearing exception" to the APA's notice-and-comment requirements. *See Clean Air Council v. Pruitt*, 862 F.3d 1, 8–9 (D.C. Cir. 2017); *Consumer Energy Council of Am. v. FERC*, 673 F.2d 425, 445 n.71 (D.C. Cir. 1982). As we have explained in the closely related context of Commission rules under the Natural Gas Policy Act, "Congress did not intend . . . to permit the Commission to use the occasion of a petition for rehearing to make any substantive change whatsoever in a rule, without providing some notice and comment." *Consumer Energy*, 673 F.2d at 446 n.71. A contrary conclusion "would effectively eviscerate the procedural protections provided by the APA." *Id.* So too here.

Outside the context of agency rehearing proceedings like those at issue here, we have held that once an agency's rule is "'valid' against the public at large," the APA generally requires the agency to afford notice-and-comment procedures before amending the rule. *Humane Soc'y*, 41 F.4th at 570. This case does not require definitive resolution of exactly "when a rule passes this regulatory point of no return," *id.* at 568, when an agency adjusts a rule in an exercise of its rehearing authority. The conferral of rehearing powers suggests some congressional desire for agency flexibility in administrative process, *cf. Int'l Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 632 & n.51 (D.C. Cir. 1973), and this case does not require us to prescribe an across-the-board answer to when an agency must provide

10

notice-and-comment procedures in exercising its rehearing authority.

Instead, we can resolve this case on the particular facts before us. Specifically, the Index set by the Initial Order at least became sufficiently final to require that any amendment undergo notice-and-comment procedures once the Index's effective date of July 1, 2021, arrived. At that point, the Initial Order necessarily "carrie[d] legal consequences," *Humane Soc'y*, 41 F.4th at 570, of a kind requiring adherence to APA procedures in connection with any substantive modification: as of the July 1, 2021, effective date, Carriers became legally obligated to charge rates within the ceiling set by the Initial Order's Index and could have been subject to enforcement proceedings for failing to comply. In January 2022, after Carriers had been bound to comply with the Initial Order's Index for several months, the Commission modified the Index in the Rehearing Order. Amending the Index at that point required the Commission to provide notice in the Federal Register of the changes it planned to make and seek comments from "interested persons." 5 U.S.C. §§ 551(5), 553(b)-(c); *see Perez*, 575 U.S. at 101. The Commission did not do so.

The Commission notes that we have declined to review rules undergoing rehearing because they were not final as to the parties, which, to the Commission, supports the idea that rehearing proceedings are an extension of an ongoing rulemaking process rather than the initiation of a new process. But the cases cited by the Commission concerned exhaustion and finality with respect to *judicial* review. In that context, when the parties sought reconsideration, they rendered the rules nonfinal as to themselves. *See City of New Orleans v. SEC*, 137 F.3d 638, 639 (D.C. Cir. 1998); *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489–90 (D.C. Cir. 1994). But whether an agency action is final as to a particular party for purposes of

11

seeking judicial review is a distinct question from whether an agency action is final for purposes of triggering the APA's procedural requirements.  Here, the Commission needed to adhere to those requirements when it modified the Index in the Rehearing Order.

In sum, the Commission failed to comply with the APA by issuing the Rehearing Order after the Initial Order's Index had become effective without affording notice of the proposed modification and an opportunity for comment.  We thus grant Carriers' petitions for review, vacate the Rehearing Order, and order the Commission to reinstate the Initial Order.

That resolution also disposes of Shippers' petitions for review.  Shippers argue that the Commission should have made the Index modifications in the Rehearing Order retroactive.  But because our grant of Carriers' petitions entails vacatur of the Rehearing Order, Shippers' challenge to the Commission's treatment of that order as prospective is moot.

\* \* \* \* \*

For the foregoing reasons, we grant Carriers' petitions for review and vacate the Rehearing Order for failure to abide by the APA's procedural requirements.  We dismiss Shippers' petitions for review as moot.

*So ordered.*